24-1614 Southern Iowa, Tom Conley et al. v. City of West Des Moines et al. Mr. Munro Please the court. Tom Conley is a decorated senior commissioned officer who retired from the U.S. military after 30 years of service. He also had decades in the security industry in and around the city of Des Moines throughout Iowa. His company is the Conley Group, and instead of saying Conley repeatedly, as I know there's a distinction here, I'll call the Conley Group TCG if that's okay to differentiate him from Tom. During the George Floyd riots in Des Moines, Tom and the Conley Group acted as security. And he noticed what was going on. He knew that there were some letters that were being written, articles in the Des Moines Register that he disagreed with. And he wrote a letter to the Des Moines Register, an op-ed, criticizing the rioters and supporting the police and asking people to support the police. Because of that, he was summoned. One of the contracts that TCG had was with the city of West Des Moines to provide security for the city of West Des Moines. He was summoned, obviously, as the president and owner of the Conley Group, because there was no other reason for him to be summoned, to a meeting between a city council member named Renee Hardman and a West Des Moines city attorney. At that meeting, he was basically lectured about race relations and was given the opportunity to recant what he'd said. Well, we have read the briefs and know the facts. Your Honor, to get right to the point then, the trial court in this case made the determination that Tom Conley and the Conley Group, either combined or separately, could not bring this cause of action, that Tom Conley had no standing to bring this cause of action, which is directly opposite the Supreme Court ruling in O'Hare, which we've also cited. Well, O'Hare is so distinguishable. It just doesn't carry the water you want it to. Well, Your Honor, in O'Hare, the United States Supreme Court said that the owner... It didn't talk about this issue. The issue was sort of potentially there, but the court's focus was elsewhere. Well, Your Honor, the finding of the trial court was that Tom Conley didn't have standing. That's what we're talking about. The United States Supreme Court said... That's when you said, I'll get to the merits. That's the merits. The United States Supreme Court in O'Hare determined that he did have standing. The owner had standing. Well, Your Honor, they had to determine he had standing, or they rendered it an opinion. That's beyond their jurisdiction. No. Somebody had standing, but the two of them, they were both in the case, the corporation and the shareholder. This is exactly the case here. In this case, the corporation and the shareholder are both in the case. My colleagues may disagree. I say O'Hare is not controlling. Now, you argue. Okay. Well, if you'd let me argue the O'Hare case, Your Honor, if... Don't argue the O'Hare case. I've read it. Okay. And I guarantee my colleagues have read it for this argument. Well, Potthoff, Your Honor, is the case I think that was cited, Potthoff. That's right. And in the Potthoff case, and I think we would all be happier if the Supreme Court would have stated the standing ruling in O'Hare, which they didn't. In Potthoff, this court looked at that and specifically said the difference in the footnote was that in O'Hare, both the owner and the corporation were petitioners. That's the only distinction I could find in Potthoff. And the only time it came up was in a footnote. And assuming that's correct, then that distinction doesn't exist here. It looked like the court ruled that Potthoff could not bring this action in his own name. It's footnote number six, Your Honor. I read it. I was on the panel in Potthoff. I noticed that, Your Honor. So it's our position, frankly, that O'Hare is controlling. I understand the court disagrees with me on that. So if it is not, then does Potthoff rule this decision? I mean, yeah, this issue? Well, Potthoff specifically stated that since they're not both named, and the italics are in the footnote are from the court, that was the issue. But does your argument still rely on the way you started, saying that O'Hare decides this? I believe that O'Hare does decide it, but Potthoff doesn't say that they couldn't bring this. The distinction made in Potthoff was it was only the owner, the corporation, that brought the case, not the owner and the corporation. So the italics are the same. Again, the ruling of this court regarding O'Hare is contained in a footnote. It's not – it's what we had to go on. But the footnote stated essentially that the difference between Potthoff and O'Hare was that in Potthoff only the owner brought the case, and in O'Hare they both brought the case. And essentially what it comes down to is whether the government can compel the endorsement of ideas that it approves of by attacking the corporate entity of the person that's making the statements. And in this instance, we have – there's a couple of other things, too. I noticed in Potthoff the corporation didn't bring the action. In this case, the corporation is a plaintiff. Tom Conley clearly – So the problem here is the nine lines on page 11 of the district court's opinion talking about the Conley group. And the court says they, plaintiffs, appear to concede that the disputed statements were made by Conley as an individual which are peculiar to him alone. Do you agree with that? No. No, that was completely wrong. Why did you argue that? If TCG has standing, we reverse. TCG does have standing because when Tom Conley was called to the city of West Des Moines to speak with the city of West Des Moines by the city council member and the city of West Des Moines attorney, he was being called to discuss the Conley group contract. So you're saying now that he was speaking on behalf of the Conley group? It says that in the complaint as well, Your Honor. Clearly, the only reason he was there was because he was the owner of the Conley group. Does it say that expressly in the complaint? He was speaking on behalf of the Conley group? I don't know that it specifically says that. He was called to discuss the Conley group's contract. There was no other reason for him to be there. They didn't just randomly call him in there to talk about what he said. They called him in there as the president of the Conley group to discuss the contract of the Conley group. And when the district court made the statement that Judge Logan has read, did you file anything to say, no, that's not it, there's more to this, he was actually speaking on behalf of the group? We filed this appeal, Your Honor. I'm not sure what else I could have done. She dismissed the case. Can you point us to a place in the record where you did make that argument to the district court in your filings? Not at this moment, but is there a spot that you could later point to us? Your Honor, the point of the matter is that the judge had the option and the obligation to review the complaint in the light most favorable to the Conley group. And what the court did was is ignored the preamble in order. You can see that. It did it in a number of cases. There were 36 or 37 paragraphs that were common paragraphs. And what happened here was the court looked at it and said, well, there's only four or five lines about this. He must have conceded this. We didn't concede that at all. I didn't even realize it was really an issue. Clearly, he was speaking on behalf of the Conley group because there was no other reason for him to be there. He certainly could have filed a motion. I'm sorry, Your Honor? He certainly could have filed a post-judgment motion attacking this, which is essential to half the standing question. If TCG has standing, I'm not sure how much it matters whether, well, Conley may have separate standing on the contract he lost, but, of course, that's other issues. Your Honor, we could have, in my experience, motions seeking to ask a court to overturn its own ruling don't usually do anything. It was our determination to file the appeal instead after the ruling, after the case was dismissed. With regards to the other claims that Conley has, the court stated that we set out the defamation in the ruling in just four short paragraphs, which, of course, again, it ignores the preamble. Tom Conley was basically divided in the Des Moines Register for his views and for what he said. We're not suing the Des Moines Register. Well, did you sue them for interference with the contract? Well, the City of Des Moines didn't interfere with the contract, or, excuse me, the register. Renee Hartman contacted. We did not sue that. No, I know, but out of the restatement of the torts, you could have filed a claim. We decided to go after this. It would have been fun because then we could have tested the extent of publishers' immunity. Well, that's something that we kind of decided against. This one sounds malicious, frankly. Yeah. Well, the City of West Des Moines contacted, specifically Renee Hartman contacted the City of Des Moines and told them, or asked them, when are you going to get rid of Tom Conley? I'm talking about the register. I have my own opinions about the Des Moines Register. I'm not sure they're really pertinent to this discussion, Judge. No, no, I'm talking about the legal aspect. No, they're not in the case. They're not in the case. We do have and we did name a defamation claim. We do have and did name a claim for intentional interference with business contracts against the City of West Des Moines. The facts are set out. I believe the court didn't look at the entire petition, just looked at the short part of the complaint that dealt specifically with those, ignoring the rest of it. So I believe that Tom Conley and the Conley group have it. Now, what's your basis to say that? Because the court says in a ruling, Your Honor, that the claim is set out in four short sentences, the defamation claim. It's not set out in four. That doesn't mean she didn't read the whole complaint. I'm not saying she didn't. Your Honor, I'm saying that the ruling stated that it was only set out in four short sentences, and it was not. It was set out in broad part throughout the entire complaint. What was set out? Well, intentional interference with business contract requires a person, and you know what they are. We set out the facts, Judge. We said specifically what we're stating. I thought you made the same comment on the other issue. I did. Your Honor, I'm inviting you into my rebuttal time. If the Court has any more questions, I will certainly happily answer them otherwise. Thank you. Mr. Richards? May I please the Court? Opposing counsel? Pleading matters, Your Honors, and sometimes wisdom comes late. I represent the appellees in this case, the City of West Des Moines, and the Council members, and represented them in the underlying District Court matter. I don't think there's any dispute that O'Hare says that independent contractors under the right circumstances, including potentially individuals and corporations, could state a claim for a First Amendment retaliation. That is not what happened in this case. I don't believe Potthoff had the categorical, meant to have the categorical interpretation of the shareholder rule that the District Court read into it. I agree, Your Honor. Or the Court's interpretation of Potthoff error. I agree, Your Honor, that the Potthoff ruling is controlling in this case. In Potthoff in 2001, which has been the law in this circuit for almost 24 years, says that an individual cannot have speech that then results in a corporation's cancellation of their contract. An individual cannot have solely derivative damages of a separate party in order to claim First Amendment retaliation. Likewise, a corporation cannot, because they are a separate party. Well, you're asserting what the District Court said. Yes, Your Honor. And I intend to look pretty closely at it because it shouldn't be right. Well, Your Honor, I believe that's the law of this circuit, and I believe that... No, the law of the circuit hasn't had a case like this. District Courts have applied this rule. In 2003, the Western District Court... Let's forget about that. Let's just take the error in the District Court's treatment of TCG standing. Yes, Your Honor. I would suggest the facts in this case don't support a claim for First Amendment retaliation by the corporation. Even taken in the light most favorable to the plaintiff, there are not facts pled that the corporation itself spoke. In fact, I would... He spoke on behalf of the corporation. Judge, I would point you to paragraph 42. No, wait a minute. A corporation is inanimate. A corporation never speaks, but a corporation can invoke the First Amendment... Judge, I agree... ...on the basis of how its speakers are treated. There's a lot of ways a corporation can speak. They can speak through advertisement. They can speak through public statements. They can speak through an individual that says, I'm speaking on behalf of the corporation. That wasn't pled in this case. In fact, the exact opposite was pled. If you sort out the facts of that meeting commanded by Ms. Hartman, it's implicit. You don't have to say that. You're not going to get a 12B6 on that kind of negative irrational inference. Judge, I respectfully disagree that it's implicit because on paragraph 42 of their amended complaint, they say specifically the cancellation of the West Des Moines security contract was done because of Conley's exercise of his right to first speech in association. And on argument, counsel said they didn't say that the rights were... He was right as a representative of the corporation. Judge, a corporation... Well, okay, let's say that the panel agrees with that proposition I just stated. Now what do we do? Just so I understand the proposition, are you saying that the court believes that the speech was made on behalf of the corporation? The corporation is a plaintiff. The corporation claims a First Amendment violation based on a statement induced, coerced by defendants at a meeting to discuss the corporation's contract in which Conley represented the corporation. And that's enough for injury in fact standing for the corporation. Now what? I think if the court finds that Mr. Conley specifically spoke on behalf of the corporation in his capacity as... We don't make fines. ...as the corporation. We don't make fines. This is 12B6. If the court believes that that is inferred from the amended complaint, that he was specifically speaking on behalf of the corporation as the corporation... It's a sufficiently fair inference that you don't get 12B6 on that ground. If the court believes that, as I said before, I don't think there's any dispute that a corporation can have a First Amendment claim. You don't reject our 12B6 opinions? I have, Your Honor. I have. A lot of them. I have. We don't reject that kind of inference even if it's not entirely plausible at 12B6. I agree it doesn't have to be plausible. It has to be possible. Go get your summary judgment. And under the facts of this case, it's not possible because they said the opposite. They said... At the meeting? He says the cancellation of the Westmoreland Community Contract was because of Tom Conley. Forget the complaint. There is something in the record that says at the meeting he said, I'm only speaking for myself? Well, if you look at how they pled it, Judge... I don't care about that. Well, his reply brief... I'll look at that in the back room. I just want your reaction if it's obvious that he was speaking for both. I disagree. So his lawyer did not competently plead it. Does that mean the district court can just throw it out? Words matter. Pleadings matter, Judge. And in this case, they didn't plead it. They pled the opposite. They point in the reply brief to paragraphs... Don't give me your professorial lecture. I mean, you know... They point to paragraphs 14 through 25 as claiming that they spoke. But my question is, what do we do if my proposition is the view of the panel? Judge, as I said in the very beginning, I don't disagree that under the right facts and circumstances... Answer the question. I'm trying. I don't disagree under the right facts and circumstances a corporation can have a claim. What's next in the case? Pardon me? What's next in the case? What do we do with this appeal? Affirm the dismissal because of the way they pled it. If we decide that it's fair, it can't be ruled out from the complaint that Conley was not speaking for the corporation at the meeting. If you believe that it passes the Rule 8 muster, then you have to remand it. No question. No, I just... Yeah. But I would ask the court to review carefully paragraphs 14 through 24, which are the paragraphs that they say relate to the corporate speech. They specifically relate to Conley. They talk about his opinions. In fact, they say his personal encounters. They talk about what his views are. They talk about a comment he posted on his personal Facebook site. So I don't think that the facts, as alleged, rise to the level of stating a claim for First Amendment retaliation by the corporation. Well, would you agree that the complaint, a fair reading of the complaint, discloses that the meeting in July 2021 would not have occurred absent the involvement of the corporation? If the corporation's not involved, no meeting. The city does their contracts with the corporation, right? So they don't care. Judge, Tom Conley's relationship with the city was through his corporation. And that's the reason for the meeting. The reason for the meeting was Renee Hardman's concerns with Tom Conley, who is the sole shareholder of the corporation. There's no question about that. When are you going to get rid of him when all they did was terminate the corporation's contract? He didn't have a personal contract with the city. It was only the corporation. So when his... So there was another contract. The when are you going to get rid of him was a different contract, right? He didn't have another contract. There was only one contract, and it was with the corporation. Now you just took me off the brief. What was his relationship with the city? Perhaps, Your Honor, you're talking about the other contract he had with the city of Des Moines. Wasn't that when are you going to get rid of Conley? Wasn't that made in regard to that relationship? Ms. Hardman reached out to... I know what you're talking about now, Judge. Ms. Hardman, the council person from West Des Moines, reached out to the city of Des Moines and said, when are you also going to get rid of Conley? And they based that as... Reached out. There is a friendly term for what she did. Well, they were actually at a conference together. Nonetheless, that's the basis of the tortious interference claim. So with the four minutes I have left, let me jump to the other two claims. Their tortious interference claim, I think in the light most favorable to the plaintiff, you can say that they met the first element, the plaintiff had a contract. They met the second element. Defendant knew of the contract. You could argue that they met the third element, that the defendant intentionally and improperly interfered with the contract by that conversation that Ms. Hardman had with the city of Des Moines manager. The fourth element of the contract, though, I think they plead themselves out of it again, which is interference caused a third party not to perform or made performance impossible. Because they also plead in the amended complaint that Tom Conley voluntarily canceled his contract with the city of Des Moines. But isn't there an inference, though, that perhaps he did it more quickly? In other words, I was maybe going to wind down this business, but boy, I had to do it a little more quickly because of this interference. He doesn't go much as to say that, Your Honor. He does say that he made the decision to do that to avoid additional negative publicity. Right, which isn't a reasonable inference that I've got to do this quicker, and so he would have lost that business that he might have gotten during the wind down because he did it sooner than he had otherwise planned to do. I don't, I disagree with the court in that regard because I believe that, because he does plead that he personally did it and that it was a mutual termination. I don't think it implies sufficiently. But what work is that because of the negative, what was the phrase, the negative publicity? Negative publicity was his reasoning for doing it. Yeah, doesn't that scoop in what was going on with the Hardeman and the other cities' contract? Judge, the way I read that, and I think the way the court read it, Your Honor may feel differently, was that it related to the communications that were communicated to the Des Moines Register to all of Des Moines. So I didn't believe that those were the same issues, and I don't think the court believed that either. I don't understand the distinction you just made. All of Des Moines were, you know. The City of West Des Moines had nothing to do with the Des Moines Register's many articles about Tom Conley. Just a passive bystander. No, it's Hardeman who interfered, not the Register. The Register may have indirectly, but they weren't sued. Hardeman did directly. As I said, you could make an argument that she intentionally and improperly interfered. I don't think that they can, that they properly pled the Fourth Claim. And so, and for now, and you can make that argument off this pleading, no 12b-6. Well, Judge. That's just the way, that's the way the federal rules work. They still haven't met the last element. The interference caused it. I'm talking about the last element. Something bad happened in the relationship with the third party. It was caused. Plausibly caused by Ms. Hardeman's interference. The key word being plausibly. I don't think they get past possibility in this case. I think it doesn't satisfy a call on 12b. You don't win that one in the Eighth Circuit very often. The district court can't do better than, you know, a few lines. It's going to be, let's try this again. Under these facts, Judge, I think I can win it if a careful evaluation of the claims are made on the amended complaint. I've got 47 seconds left, so I'll speak very quickly about defamation. The court does say that there's really only four paragraphs about defamation. I agree with counsel that he's pled several other facts in the case prior to that. But this is a classic situation of a bare-bones recitation of a tort. One of the four paragraphs even just says, Iowa recognizes defamation by implication. A barely recognized tort. Correct. And I would say that with this tort, the activity that the plaintiff is claiming causes defamation by implication is a series of events that is barely tied together by spider webs. It's his comments. It's a Des Moines Register article. It's an agenda item. And then it's a final cancellation of his contract. And they say that that, therefore, implies by defamation by implication that he was a racist. And they determined that was defamation per se. I see I'm out of time, Your Honors. Thank you very much. For rebuttal, Your Honor. Counsel, just to respond briefly, Your Honor. I believe the court is right in that drafting a complaint is an art. And sometimes the assumption maybe is made that a common understanding would come out. We pled First Amendment retaliation against the Conley Group. We specifically set out where Mr. Conley was acting, and he couldn't have been acting in any other capacity, but as the spokesperson for the Conley Group. I think the court's already talked about that. I'd like to talk a little bit about tortious interference. Again, we do specifically state in the petition that the reason that Mr. Conley and the Conley Group, TCG, canceled their contract with the City of Des Moines as they could see where it was going, the City of Des Moines was clearly going to cancel the contract themselves. And he made the determination to cancel in advance because he didn't want that publicity when he sold the business. Now, which contract are we talking about? The Des Moines contract, Your Honor, the second contract. I thought with counsel we were discussing the West Des Moines. Both. I think both those came up. The West Des Moines contract, Your Honor, the intentional interference with business contract is the second contract, the City of Des Moines contract. So I just wanted to say that that's. Which does the tortious interference claim? The City of Des Moines contract. It doesn't affect West Des Moines. Well, we don't. West Des Moines, that contract is not alleged to be tortiously interfered. We can't interfere with your own contract. So the City of West Des Moines can't. They could breach the contract and we could have made a breach claim. No, I mean Tom Conley's contractual relationship. I thought he had a contract relationship with. West Des Moines? I don't know. You guys just. He did not, Judge. The only contract, and again, it kind of supports what we were saying before. The only contract that existed between West Des Moines and Conley or Conley TCG was with TCG. It was a contract with TCG. Who did Conley have a contract with? Nobody. TCG had the contract with the City of Des Moines. TCG had the contract with the City of West Des Moines. So the interference would have been. What was the first one? TCG had a contract with the City of Des Moines to provide security. TCG had a contract with the City of West Des Moines to provide security. And Renee Hartman contacted the City of Des Moines and asked them when they were going to get rid of the contract with Conley. And by Conley, I think Conley Group or Tom Conley. I'm not sure that they separated them, that anyone actually separated them in their heads. But that was the contract. The meeting where the speech was made, which contract were we talking about? Was that addressed? You mean where Tom Conley was talking with Renee Hartman? And the City Attorney. That was the West Des Moines contract. TCG's contract with West Des Moines. That's why I said he didn't. Tom didn't have any separate contracts. All he had was the TCG contract. I see my time's up unless there's any more questions. Thank you. Thank you, Your Honors.